UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KIMBERLY K. N., | Case No. 24-CV-00039 (JFD) |
| Plaintiff, | |
| v. | **ORDER ON MOTION FOR SUMMARY JUDGMENT** |
| LELAND DUDEK, *Acting Commissioner of Social Security,* | |
| Defendant. | |

This matter is before the Court on the Complaint of Plaintiff Kimberly K. N. (Dkt. No. 1) seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision by the Commissioner of Social Security, who denied her applications for Supplemental Security Income (SSI) and disability insurance benefits (DIB). (Pl. Mot. Summ. J. 1, Dkt. No. 11.) Plaintiff states she is living with cervical degenerative disc disease, right shoulder tendinitis, left hip arthritis, and asthma. (Soc. Sec. Admin. R. (hereinafter "R.") 15–24.)[1] Plaintiff challenges the Commissioner's final decision, saying it was "an abuse of discretion" and that while the Administrative Law Judge ("ALJ") found that she could not adequately perform her past employment *as generally performed*, he erred in finding that she could perform the job as *she actually performed it*. (Pl.'s Mem. in Supp. of Summ. J. 1, Dkt. No. 12 ("Pl. Br.").) Plaintiff claims that this decision constituted "reversible error."

---

[1] The consecutively paginated Social Security administrative record is filed at docket number 6. The Court cites to that pagination rather than to the docket number and page assigned by the Court's CM/ECF system.

1

(*Id.*) The case is currently before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 11, 14). The undersigned finds that the ALJ's decision is supported by substantial evidence, denies Plaintiff's Motion for Summary Judgment, and grants the Commissioner's Motion for Summary Judgment.

## I.   BACKGROUND

### A.   Process for Applying for Disability Benefits

People with disabilities can qualify for financial support from the Social Security Administration (SSA) through one or both of its assistance programs: the Disability Insurance (DIB) Program under Title II of the Social Security Act and the Supplemental Security Income (SSI) Program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). DIB is an insurance program that provides support to those who have worked and had sufficient social security taxes withheld from their pay to qualify for coverage if they become disabled. *Id.* 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). SSI is a public assistance program that provides support to people with disabilities, whether or not they have paid social security taxes, who demonstrate financial need. *Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose). Plaintiff sought benefits under both programs.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). It

further defines a physical or mental impairment as one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To receive benefits from either DIB or SSI, claimants submit applications to the SSA, which grants or denies them according to its own regulations. 20 C.F.R. § 404.900 (outlining DIB administrative process under Title II); 20 C.F.R. § 416.1400 (outlining SSI administrative process under Title XVI). SSA officials grant or deny an application at what is called the "initial determination." 20 C.F.R.§ 404.900(a)(1); 20 C.F.R.§ 416.1400(a)(1). If a claimant is unsuccessful at their initial determination and wants the decision reviewed, they must timely file a request for reconsideration. 20 C.F.R.§§ 404.900(a)(2), 404.909, 416.1400(a)(2), 416.1409. If the claimant's application is denied at the reconsideration level and the claimant wants the reconsideration reviewed, they must timely ask for a hearing before an administrative law judge ("ALJ"). 20 C.F.R.§§ 404.900(a)(3), 404.933, 416.1400(a)(3), 416.1433.

The ALJ determines whether the person is disabled using the five-step analysis described in the social security regulations. *See* 20 C.F.R. §§ 404.1520, 416.920. At each step, the ALJ decides whether the person is disabled under the criteria of that step. If the answer is "yes," the analysis goes no further, and the person is deemed disabled. If the answer is "no," the ALJ continues to the next step. For the first four steps, the claimant bears the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). Steps one through four ask: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability (if they have been working for pay, they cannot be deemed

disabled), (2) whether the claimant is suffering from a severe medical impairment, (3) whether claimant's impairment meets or equals the severity of one or more of the impairments listed in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, App. 1), and (4) whether the claimant has the Residual Functional Capacity (RFC) to perform their past relevant work (PRW). 20 C.F.R. § 404.1520. If the claimant successfully meets their burden of proof for steps one through four, the Commissioner bears the burden at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v).

If the claimant is dissatisfied with the ALJ's decision, they can request that a panel of the Social Security Appeals Council review the ALJ's decision. 20 C.F.R. §§ 404.900(a)(4), 404.968, 416.1400(a)(4), 416.1468. If the Appeals Council grants review of the ALJ's decision, its decision on the issue becomes the final decision of the Commissioner, but if the Appeals Council denies review, then the ALJ's decision is the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). After obtaining a final decision, a claimant can seek judicial review of the Commissioner's decision in federal district court in the district in which they live. *Id.*; 42 U.S.C. § 405(g).

### B. Plaintiff's Application for Disability Benefits

The Court limits itself to describing those facts relevant to the issues presented for review. Plaintiff applied for benefits under Title II of the Social Security Act and for SSI under Title XVI of the Act on April 21, 2020. (Pl.'s Br. at 2.) Plaintiff, then in her late fifties, (R. 219) alleged that she was disabled and unable to work as of January 15, 2019, (Pl.'s Br. at 2) when she stopped working as a cashier at a secondhand clothing store. (R.

49–50, 245). In her applications, Plaintiff claimed she could not work because of arthritis in her left hip, chronic back pain, high blood pressure, asthma, and foot problems. (R. 71.) The SSA denied Plaintiff's initial claims for both DIB and SSI and affirmed those denials on reconsideration. (Pl.'s Br. at 2.)

### C. Plaintiff's Hearing in Front of an ALJ

Plaintiff appealed to an ALJ, who held a hearing at which Plaintiff testified. (R. 8.) At the hearing, Plaintiff stated that she had work experience in multiple jobs, including as a cashier at a department store, a store clerk and cashier at a secondhand clothing store, a home attendant, and an assembler at a promotional products company. (R. 38, 41, 42, 44.) While her most recent work was as a store clerk and cashier at a secondhand clothing store, the ALJ determined that her work there did not qualify as substantial gainful employment because she made less than $10,000 in the year she worked there. (R. 38, 47.) Additionally, the VE testified at the hearing that Plaintiff's work at the promotional products company would likely be the only past work of hers that would fit the RFC described by the ALJ. (R. 49.) The nature of Plaintiff's work at the promotional products company, then, is central to Plaintiff's appeal from the ALJ's decision.

Plaintiff worked as an assembler at the promotional products company from 2007 to 2013. (Pl's. Br. 4). That job required Plaintiff to sit while operating a computer, which connected to a specialized adhesive decal printer. (R. 44.) Plaintiff would then remove the decals from the printer and position them on various promotional products. (*Id*.) Plaintiff testified that in this job, she was seated for roughly 80% of her work day and was standing or walking for the remaining 20% of her day. (R. 47.) In her brief, Plaintiff claims that she

5

only performed this specific role for a portion of her time at the promotional products company and that the remainder of her work required extensive standing, climbing, and exposure to machinery. (Pl's. Br. 4–5.) However, at the hearing, Plaintiff stated that the job as described in her testimony, for which she was primarily seated, "was pretty much [her] job for seven-and-a-half years." (R. 45.) When asked if there was anything she wanted to clarify as to Plaintiff's past work, Plaintiff's counsel stated, "No, Your Honor, that sounds right to me." (R. 47.) It was this information upon which the Vocational Expert ("VE") relied in making his assessments at the hearing. (R. 49) ("Q: … If this hypothetical person were essentially limited to light level lifting with standing and walking for two out of eight hours without any further restrictions, would that allow for any of the past work? A: … based on her testimony, the past work as performed. In fact, she did do that, it seems, as the assembler, printed product.").

Plaintiff testified that arthritis around her left hip was causing her the most issues as regards her ability to work. (R. 50–51.) Notwithstanding the pain that Plaintiff experiences as a result of the issues with her hip and the impact those issues have on her ability to work, Plaintiff has, to this point, declined to have hip replacement or other surgery to address the issue. (R. 52.)

At the hearing, the VE characterized Plaintiff's work at the promotional products company as "light work," as defined in 20 CFR 404.1567(b) and 416.967(b), a characterization that the ALJ adopted in his decision. (R. 48.) That characterization applied to the job both as it is generally defined in the Dictionary of Occupational Titles ("DOT"), and as Plaintiff actually performed it, based on her description at her hearing. (R. 48–49.)

Particularly, the VE used the Plaintiff's statement that the items she was required to manipulate in that role weighed between 10 and 20 pounds. (R. 46, 48.) The VE then stated that a person limited to 2 hours of standing or walking in an eight-hour day would be able to perform the work required of a Printed Product Assembler, both as generally performed and as actually performed by Plaintiff. (R. 49, 64.) After the VE made this statement, Plaintiff's attorney declined an opportunity to ask him questions regarding his assessment or provide more details on the demands of Plaintiff's work. (*Id*.) It was only after the hearing that Plaintiff raised certain other aspects of her work at the promotional products company, which she claims conflict with the RFC determined at the hearing.

### D. The ALJ's Analysis

After hearing the testimony and reviewing the record, the ALJ concluded, based on the five-step, sequential analysis described above, that Plaintiff was not disabled under the Social Security Act and summarized his findings in a written decision. (R. 15–28.)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity[2] since January 15, 2019. At step two, the ALJ found that Plaintiff had multiple

---

[2] If a claimant can engage in "substantial gainful activity" after their claimed onset of disability date, the SSA will find them not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). An individual is engaged in "substantial gainful activity" if their work "involves significant physical or mental activities." 20 C.F.R. §§ 404.1572, 416.972. The SSA considers an individual's earnings in determining whether their work rises to the level of "substantial gainful activity." 20 C.F.R. §§ 404.1574, 416.974 ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity.")

severe impairments,[3] specifically cervical degenerative disc disease, right shoulder tendinitis, left hip arthritis, and asthma (R. 17.) The ALJ found that Plaintiff's seborrheic karatosis, right carpal tunnel syndrome, and plantar fasciitis were not severe because the record showed that "[n]one of these impairments singly or in combination, result in more than minimal work-related restriction persisting at least 12 months during the relevant time period." (R. 18.)

Moving to step three, the ALJ consulted the listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d) 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.[4] The ALJ concluded that none of Plaintiff's severe conditions met or medically equaled the severity of the listed conditions. (R. 18.) The ALJ specifically consulted the listings for disorders of the skeletal spine resulting in compromise of a nerve root, abnormalities of a major joint in any extremity, and asthma. (*Id.*); *see* 20 C.F.R. pt. 404, subpart P, app. 1, §§ 1.15 ("disorders of the skeletal spine

---

[3] The SSA considers an impairment not severe if "it does not significantly limit [a claimant's] ability to do basic work activities," such as walking, standing, seeing, hearing, speaking, remembering, using judgment, and responding appropriately to the work environment. 20 C.F.R. §§ 404.1520(c), 404.1522, 416.920(c), 416.922. In contrast, a severe impairment must significantly limit a claimant's ability to do these activities, and the impairment must last at minimum 12 months. 20 C.F.R. §§ 404.1522, 416.922, 404.1509, 416.909.

[4] The listings are a collection of criteria that the SSA uses to determine whether a particular condition "is severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525, 416.925. There are criteria for many different conditions. *See generally* 20 C.F.R. Part 404, Subpart P, Appendix 1.

resulting in compromise of a nerve root"), 3.18 ("abnormality of a major joint in any extremity"), 3.03 ("asthma").

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC").[5] As part of that assessment, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (R. 21.) The ALJ noted that the Plaintiff's course of treatment was "minimal and conservative." (*Id.*) In particular, the ALJ further observed that the Plaintiff was not interested in pursuing a hip replacement due to her friends reporting poor outcomes with this procedure. The ALJ also found that Plaintiff did not pursue or adequately follow through with other treatment options, such as steroid injections, physical therapy, and medication treatment. (*Id.*) The ALJ also found that the Plaintiff "only rarely is noted to be ambulating with a cane and has never been documented to be using a walker on examinations with providers" and that when she did shortly complete physical therapy, her conditions improved. (*Id.*)

Ultimately, the ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except sitting for six hours, standing and walking for two hours out of an eight-hour workday; occasional operation of foot controls with the left lower extremity; occasional reaching overhead bilaterally; able to climb ramps and stairs occasionally; no climb [sic] ladders, ropes, or scaffolds; no balancing as that term is defined by the Selected Characteristics of Occupations; occasional stooping, kneeling, and crouching; no crawling; no exposure to unprotected heights or moving mechanical parts; no concentrated exposure to humidity or to dust, odors, fumes and pulmonary irritants; no concentrated exposure

---

[5] The RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

to extreme cold or extreme heat; and able to use a cane to walk longer distances over 100 feet.

(R. 20.) The ALJ concluded that with this RFC, Plaintiff could perform her past employment with the promotional products company as a Printed Products Assembler (Dictionary of Occupational Titles (DOT) No. 794.687-010), a light job both per the DOT and as actually performed. (R. 23.) Consequently, the ALJ found that Plaintiff was not disabled. (R. 24.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for judicial review. (R. 1.)

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. She argues a single point—that the ALJ erred by failing to compare Plaintiff's RFC with the actual functional demands of her past relevant work as an assembler as she described the job in her Work History Report and testimony. (Pl's. Br. 2.) Plaintiff contends it was error for the ALJ to find that she could perform her past work at the promotional products company because the ALJ did not properly assess her job requirements later in her career there, when she claims she was working in several roles, some of which involved extensive standing and lifting. (*Id*. 11–12.) She argues that because she could not perform that work as actually performed, the ALJ was required to find her disabled at step five under 20 C.F.R. § 404, Appendix 2 to Subpart P, *Medical Vocational-Guidelines*, Section 202.00, Table No. 2 – Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairment(s) ("Grid Rule 202.01"). She also says that the RFC determined

10

by the ALJ directly contradicts the work she did at the promotional products company, particularly in the RFC's limitations on standing/walking, lifting, exposure to machinery, and climbing ladders. (Pl's. Br. 2.)

## II.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). This case presents a mixed question of error of law and existence of substantial evidence, because Plaintiff's contention is that the ALJ made an error of law by failing to compare the ALJ's determined RFC for Plaintiff to the factual record that shows how her work was actually performed at the promotional products company.

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of

those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

In determining a claimant's RFC, an ALJ may consult with and seek testimony from a VE. The VE can consider the demands of the claimant's past relevant work <u>either</u> as the claimant *actually performed* it or *as it is generally performed* in the national economy. *Wright v. Astrue*, 489 F. App'x 147, 149 (8th Cir. 2012) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)).

### III.  Discussion

The ALJ determined Plaintiff's Residual Functional Capacity (RFC) as allowing light work, as defined in 20 CFR 404.1567(b) and 416.967(b), with some additional limitations. (R. 244.) Plaintiff does not challenge the RFC determination by the ALJ, but she does challenge the application of the RFC to Plaintiff's previous relevant work. The ALJ determined that, even with her modified light RFC, the Plaintiff could perform the job duties of a paper products assembler, as she performed that job. Plaintiff claims that this

determination constituted reversible error because the additional limitations in the RFC make it impossible for her to perform those duties. Plaintiff argues that if the ALJ had concluded that she was incapable of performing that job, she would be entitled to benefits because with her age and RFC, she would be *per se* disabled under Grid Rule 202.01. While substantial evidence exists to support Plaintiff's conclusion, substantial evidence also exists to support the ALJ's decision, and therefore, the Court affirms the Commissioner's decision.

### A. The ALJ's conclusion that Plaintiff can perform past work with her RFC is supported by substantial evidence.

In the hearing before the ALJ, Plaintiff testified that "I ran a machine off of a computer that cut out the stickers and then printed out the stuff … It would cut it out and then we would sit and put the stickers on by hand. … [T]hat was pretty much my job for seven-and-a-half years." (R. 44–45.)

Plaintiff argues that the ALJ's finding was contradictory because it found her able to do her previous job as performed while simultaneously crafting an RFC that contained four restrictions that, if honored, would mean Plaintiff could not do her job as performed. Specifically, because the RFC restricted Plaintiff to 1) "standing and walking for two hours of an eight-hour workday," 2) "no exposure to . . . moving mechanical parts," 3) lifting no more than twenty pounds, and 4) "no climb[ing] ladders" (Pl. Br. 12–13), Plaintiff argues that she could not do her past work at the promotional products company as performed

13

because any one of those restrictions individually would prevent her from doing so. (*Id*.) The Court disagrees.

First, the restriction that the Plaintiff must sit for six hours out of an eight-hour work day is substantially the same as the conditions of the work that the Plaintiff reported when she said that her work required "80% sitting and [] 20% walking or standing." The six hours of sitting pereight hour workday required by the modified RFC is equivalent to 75% of a day sitting, but this five percent discrepancy amounts to 24 minutes per day, which can be accounted for by natural fluctuations in standing needs on a day-to-day basis. Plaintiff stated that the standing or walking time in the job was to notify management of an issue, discuss artwork discrepancies, or walk to the break room for lunch. (R. 46.) These needs can certainly be accommodated within the given standing and walking limitation in the RFC determined by the ALJ.

Second, the job, as described by the Plaintiff, does not involve the type of "moving mechanical parts" typically envisioned to maintain worker safety. Plaintiff's job at the promotional products company involved operating a computer, which controls a printer with a cutting capability. (R. 44–45.) Because the printing and cutting functions are contained within the machine itself, none of the mechanical components of that machine are exposed to an operator any more than would be true of a typical, consumer-grade printer. (R. 45.) That understanding is supported by the transcript of the hearing in the record and provides substantial evidence to support the ALJ's determination.

Third, the limitation on the Plaintiff lifting no more than 20 pounds was informed by the Plaintiff's testimony that in her role as a printed Products Assembler "we did small

products, you know, probably ten to 20 pounds," and that moving full pallets of products was "someone else's job." (R. 46.) Because the RFC limitation was directly informed by the plaintiff's testimony, there is no reason to disturb the ALJ's finding that Plaintiff could perform the work as she actually performed it.

The ALJ's RFC finding that Plaintiff cannot climb ladders, ropes, or scaffolds does not preclude Plaintiff's work at the promotional products company, as she described it at the hearing, so the ALJ did not err in finding that her work as performed did not conflict with the assigned RFC. Plaintiff claims that her actual work involved "climb[ing] a ladder to clean on top of the machines every day, sometimes multiple times per day," which "clearly conflicts" with the ALJ's RFC finding. (Pl's. Br. 17, Dkt. No. 12.) However, this information was not provided until after the ALJ made his finding (R. 310) and any refusal to consider the statements in the Plaintiff's post-hearing affidavit cannot be considered factual error by the ALJ. If it was erroneous at all, it was legal error by the Appeals Council, a possibility which is discussed below.

**B.     The Commissioner's final decision did not result from an error of law.**

Plaintiff alleges two errors of law committed by the Commissioner which she claims warrant reversal, both of which relate to information presented in an affidavit after the ALJ issued his decision and before the Appeals Council ruled on her appeal. (R. 308–10.) Plaintiff argues that the ALJ did not "compare [her] RFC with the actual functional demands of her past relevant work as an assembler at [the promotional products company], as she described the job in her Work History Report" and that the ALJ failed to "explore the physical demands of [Plaintiff's] other workstations." (Pl's. Br. 13–14, Dkt. No. 12.)

15

Plaintiff intimates that the ALJ breached his duty to fully develop the record. However, Plaintiff and her counsel failed to provide the information in the affidavit at the hearing, despite having many opportunities to supplement the record. (R. 47, 49, 63, 69.) Ultimately, these issues were not raised until over four months after the ALJ finalized his decision, and when they were raised with the Appeals Council through an affidavit, the Council found that the affidavit did not provide a basis for changing the ALJ's decision. (R. 1.) In her claim that the ALJ made reversible legal error, the Plaintiff provides very little, if any, citation to legal authority.

On appeal, the Appeals Council must consider post-record evidence when such evidence is: "(1) new; (2) material; (3) relates to the period on or before the date of the ALJ's hearing decision; and (4) presents a reasonable probability that the outcome of the decision would change." *Thor S. v. Berryhill*, No. 18-CV-538 (NEB/KMM), 2018 WL 7141873, at *5 (D. Minn. Dec. 13, 2018), *report and recommendation adopted*, No. 18-CV-538 (NEB/KMM), 2019 WL 368459 (D. Minn. Jan. 30, 2019). Where "the Appeals Council considers the new evidence but declines to review the case, district courts review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Brazil v. Colvin*, No. 15-CV-1631 (HB), 2016 WL 8200434, at *5 (D. Minn. May 9, 2016) *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). This is the case here, where the Appeals

Council considered the evidence in Plaintiff's affidavit but found that it did not provide a sufficient basis to change the ALJ's decision. (*See* R. 1–4.)

Even with the evidence in the Plaintiff's affidavit, there is substantial evidence in the record to support the ALJ's conclusion that the Plaintiff could still do her past work as she actually performed it at the promotional products company. Plaintiff has provided contradictory evidence on the issue of the climbing required in her previous work, as well as the extent to which she performed duties at other workstations not addressed by the VE or the ALJ. At the hearing, when the ALJ was deciding whether Plaintiff was disabled, Plaintiff, through her counsel, declined to raise these issues.[6] Plaintiff's counsel was given multiple opportunities to provide that information, but none of these issues were even mentioned. It was only after the Plaintiff had the benefit of a written decision from the ALJ that she mentioned any climbing requirement of her work or the fact that she worked at other workstations. (R. 310.) With the benefit of this information, an ALJ may have found the new information persuasive, but when weighing that information against the testimony the Plaintiff gave at her hearing, substantial evidence exists that would support the ALJ's conclusion.

That evidence includes the Plaintiff's testimony that "[she] ran a machine off of a computer that cut out the stickers and then printed out the stuff … It would cut it out and

---

[6] Plaintiff does not challenge the procedural fairness of her hearing in front of the ALJ, nor could she. Plaintiff was given multiple opportunities to discuss her past work at the hearing, including her work at the promotional products company, which the ALJ ultimately used to determine that she was not disabled. She shared many details about that job and others she had held and about the health conditions she experiences, discussed above.

17

then we would *sit* and put the stickers on by hand." (R. 44–45 (emphasis added).) It also includes the VE's testimony that, with the RFC as established by the ALJ, including a limitation of "no climbing of ladders, ropes, or scaffolds," the Plaintiff could perform the "job … as it was performed." (R. 64.) He based this conclusion on his education, training, and experience. (R. 66.) Combining the Plaintiff's testimony and the conclusions of the VE, the ALJ made a decision based on substantial evidence that included the information provided to him at the time. As to Plaintiff's later-provided affidavit, the ALJ would have been—and this Court is—entitled to give Plaintiff's live testimony under oath more credibility than an affidavit that was not provided until after the decision to deny benefits was made. *See Taylor v. Chater*, 118 F.3d 1274, 1277 (8th Cir. 1997).

Plaintiff's claim of legal error as to which aspects of her work at the promotional products company should be considered is insufficient because the approach taken by the VE is not dispositive of how the ALJ will view the employment, and the ALJ had substantial evidence to support his conclusion. The record reflects that Plaintiff was "moved to standing all day" after five years with the company and that the ALJ had access to and considered all of that work. (R. 268.) The fact that Plaintiff said that she was "moved" could easily be interpreted as the end of one role with the company and the beginning of a second role with the company, and if so construed, the ALJ was right to consider the work she did before Plaintiff was moved as work experience independent of the work she did after she was moved. It should have come as no surprise to Plaintiff that the ALJ would have focused on the work that she was initially hired to do because that work was the primary subject of testimony at the hearing. (R. 44–46.) When discussing her

18

promotional products job, Plaintiff only discussed her work at the printing machine, where she would enter information into a computer connected to a printer, cut adhesive decals from printed sheets, and affix those decals to promotional items. (*Id.*) There was not any significant discussion of any other work she did at the promotional products company. Because there is substantial evidence to support the ALJ's determination, even after considering the affidavit submitted by the Plaintiff after her hearing, the Court finds that neither the ALJ nor the Appeals Council made any legal error warranting reversal or remand of the Commissioner's decision.

### IV. Conclusion

Neither the ALJ nor the Appeals Council made any legal error, and the final decision of the Commissioner of Social Security is supported by substantial evidence in the record. Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 11) is **DENIED**.
2. Defendant's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**.
3. The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: February 28, 2025        *s/ John F. Docherty*
                                JOHN F. DOCHERTY
                                United States Magistrate Judge